**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bradshaw Home Medical Equipment, L.L.C., <br><br> Plaintiffs, <br><br> vs. <br><br> Hospice Family Care, et al., <br><br> Defendants. | No. 13-CV-8218-PCT-PGR <br><br> **ORDER** |

Before the Court is Plaintiff's motion to remand. (Doc. 12.) Defendant opposes the motion. (Doc. 14.) For the reasons set forth herein, the motion is denied.

**BACKGROUND**

Plaintiff Bradshaw Home Medical Equipment filed a complaint in Yavapai County Superior Court on August 14, 2013, alleging breach of contract and breach of the implied covenant of good faith and fair dealing. (Doc. 1, Ex. A.) Defendant removed the case on September 4, 2013, and filed an answer on September 11, 2013. (Doc. 1, 6.) The case was assigned to this court on September 19, 2013.

Plaintiff's claims arise out of a Health Care Services Agreement, effective February 1, 2013, between Plaintiff and National HME.[1] Defendant informed Plaintiff in May 2013 that it was terminating the Agreement.

Plaintiff alleges that Defendant breached the contract by failing to make timely payments, failing to honor the exclusivity provision of the Agreement, and by wrongfully terminating the Agreement. The complaint seeks judgment for the balance due on past invoices, amounts accruing in lost revenue, and interest, late fees, and attorneys fees.

Defendant removed the action based on diversity jurisdiction pursuant to 28 U.S.C. §§ 1332, 1441, and 1446. (Doc. 1.) Defendant alleges that this is an action involving a controversy between citizens of different states and that the amount in controversy exceeds $75,000. (*Id.*)

## DISCUSSION

A defendant may remove a case from state court to federal court if the case could have originally been filed in federal court. 28 U.S.C. § 1441(a). "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000 . . . and is between . . . citizens of different States." 28 U.S.C. § 1332(a)(1). The removing party bears the burden of establishing diversity and the amount in controversy by a preponderance of the evidence. *Hertz Corp. v. Friend*, 559 U.S. 77, 96 (2010). The party must support its jurisdictional allegations by "competent proof." *Id.* at 96–97. Courts "strictly construe the removal statute against removal jurisdiction" and must reject removal "if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

---

[1] The complaint alleges that National HME "was the authorized agent and manager authorized to enter into binding agreements for Defendant Curo Hospice." (Doc. 1, Ex. A, ¶ 8.)

- 2 -

1  In opposing removal and seeking remand to state court, Plaintiff contends that 2 Defendant fails to meet its burden of proof on both the amount in controversy and the 3 diversity of the parties. The Court disagrees.

**1.  Amount in controversy**

Courts decide whether the amount in controversy requirement has been met by first considering whether the amount is "facially apparent" from the complaint. *Abrego Abrego v. The Dow Chemical Co.*, 443 F.3d 676, 690 (9th Cir. 2006) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 377 (9th Cir. 1997)). "Where it is not facially evident from the complaint that more than $75,000 is in controversy, the removing party must prove, by a preponderance of the evidence, that the amount in controversy meets the jurisdictional threshold."*Matheson v. Progressive Specialty Ins. Co.*, 319 F.3d 1089, 1090 (9th Cir. 2003); *see Guglielmino v. McKee Foods Corp.*, 506 F.3d 696, 699 (9th Cir. 2007) (explaining that when the complaint does not allege a specific amount of damages, the party seeking removal bears the burden of persuasion that it is "more likely than not" that the amount in controversy exceeds the jurisdictional amount). If the removing party's "allegations of jurisdictional facts are challenged . . . , he must support them by competent proof." *Gaus*, 980 F.2d at 567.

For purposes of calculating the amount in controversy, a court may consider, in addition to potential compensatory damages, a plaintiff's potential punitive damages and attorneys' fees. *See Ansley v. Metropolitan Life Ins. Co.*, 215 F.R.D. 575, 577 (D.Ariz. 2003) (citing *Chabner v. United of Omaha Life Ins. Co.*, 225 F.3d 1042, 1046 n.3 (9th Cir. 2000), and *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998)).

Plaintiff seeks compensatory damages, punitive damages, and attorneys' fees. Because the jurisdictional amount is not facially evident from the complaint, Defendant must prove the amount by a preponderance of the evidence.

The complaint alleges that Plaintiff is entitled to compensatory damages consisting of "actual damages in a specific amount to be proved at trial, plus interest, expenses and attorneys' fees"; "the balance due on past invoices, amounts accruing in lost revenue, plus

- 3 -

1  interest, late fees, and attorneys' fees"; "damages in the sum certain of the 'set ups' Plaintiff
2  has been deprived of"; "pre-judgment interest at the maximum allowable rate on this sum
3  certain accruing from May 20, 2013 until the date of the Judgment"; and post-judgment
4  interest. (Doc. 1, Ex. A, ¶¶ 35, 40, A–C.) The complaint further alleges that Plaintiff is
5  entitled to "tort damages on Defendant for attempting to deprive the Plaintiff of the benefits
6  of such agreements, to deprive the Defendant of the benefits taken without compensation,
7  and to deter the Defendant from acting in bad faith and otherwise seeking to take advantage
8  of similar relationships in the future." (*Id.*, ¶ 33.)

9  Defendant asserts that "a careful reading of the ambiguous Complaint makes clear that
10  Plaintiff seeks to recover at least $91,730.50." (Doc. 14 at 7.) This assertion is based in part
11  on figures alleged by Plaintiff. The complaint specifically refers to $18,730.50 for amounts
12  due and owing on invoices and $3,000 in attorneys' fees (Doc. 1, Ex. A, ¶¶ 21, C).[2] The
13  Court agrees that these figures, totaling $21,730.50, are properly included in calculating the
14  jurisdictional amount.

15  In addition to these amounts, Defendant interprets the complaint as seeking "a
16  minimum of $70,000 in either reliance damages for expenses incurred in reliance on the
17  Agreement or in expectation damages for lost profits." (*Id.* at 7–8.) The complaint states that
18  as a result of the Agreement "Plaintiff invested nearly $80,000 in equipment upgrades."[3] (*Id.*,
19  ¶ 18.) The complaint alleges that the Defendant has refused to allow it to perform new "set
20  ups" since May 2013. (*Id.*, ¶ 22.) Therefore, Plaintiff was allowed to perform exclusively as
21  it expected to for only about one-eighth of the two-year term of the Agreement. (*Id.*, ¶¶ 12,
22  17.) Therefore Defendant, in arriving at the $70,000 figure, interprets the complaint as

---

[2] While the parties disagree as to whether attorneys' fees incurred after removal may be included in the amount in controversy, the Court agrees with Defendant the $3,000 figure represents the minimum amount of fees sought in the complaint.

[3] As stated in the complaint, Plaintiffs sent a demand letter to Defendant prior to filing this suit. The letter referred to Plaintiff's $80,000 investment in new equipment. (Doc. 1, Ex. A, ¶ 26.)

- 4 -

1  alleging that Plaintiff has suffered damages of at least seven-eighths of the amount it invested
2  in reliance on the Agreement. (Doc. 14 at 5.) Defendant asserts that this figure is properly
3  included in the amount in controversy as "consequential damages or under a reliance theory,
4  and [] because that amount is indicative of the amount of lost profits Plaintiff will seek to
5  recover." (Doc. 14 at 4.)

6  In addition, as Defendant notes, the complaint seeks expectation damages in the form
7  of lost profits. The complaint requests damages equal to "the 'set ups' Plaintiff has been
8  deprived of due of Defendant's breach." (Doc. 1, Ex. A, ¶ A.) The complaint does not specify
9  an amount for these lost set ups. However, according to Defendant, based on monthly
10 invoices billed by Plaintiff to National HME, "the minimum amount that Plaintiff could have
11 reasonably expected to receive under the two-year Agreement . . . is $297,499.00."[4] (*Id.* at
12 5.) Defendant contends that these "lost profits" can be taken into account in calculating the
13 amount in controversy.

14 Next, Defendant notes that the complaint requests punitive damages in an unspecified
15 amount. Defendant argues that Arizona courts have awarded punitive damages in cases
16 involving breaches of good faith and fair dealing. (*Id.* at 6–7.) Defendant cites cases where
17 punitive damages in amounts greater the jurisdictional limit were awarded for breaches in the
18 context of insurance contracts. For example, in *Hawkins v. Allstate Ins. Co.*, 733 P.2d 1073,
19 1077 (1987), the court upheld a $3.5 million award of punitive damages for a breach of the
20 duty of good faith. In *Nardelli v. Metro. Group Prop. & Cas. Ins. Co.*, 277 P.3d 789, 806

---

[4] Plaintiff's invoices from February 2013 through April 2013 show that Plaintiff billed National HME on average nearly $16,000 per month for services rendered under the Agreement: $15,685.50 in February, $16,844 in March, and $15,428 in April. (*See* Doc. 14, Ex. A.) Based on these figures, according to Defendant, Plaintiff's lost profits can be calculated as follows. For May 2013 through August 2013: $25,499 ($16,000 per month less the amount invoiced during that time for continuing patients). For September 2013 to January 2015: $272,000 ($16,000 per month for the remaining 17-month term of the Agreement). (Doc. 14 at 6.)

1  (App. 2012), the court upheld a 1:1 ratio of punitive damages to compensatory damages for
2  an insurer's bad faith.

3  Plaintiff counters that the complaint includes neither a theory under which it would
4  recover for sums spent on the new equipment nor a figure for the amount of such a recovery.
5  (Doc. 17 at 2–3.) Plaintiff also contends that Defendant has not presented adequate proof
6  with respect to the amount of punitive damages. (*Id.* at 3–5.)

7  The Court agrees that Defendant has not provided competent proof concerning
8  punitive damages. While the complaint clearly requests an award of punitive damages, the
9  cases cited by Defendant are not sufficiently analogous to guide the Court in assigning a
10 figure to such damages.

11 However, the Court concludes that even without including an amount for punitive
12 damages, the damages sought in the complaint, taken cumulatively, likely would exceed
13 $75,000. Along with unspecified punitive damages, the complaint seeks pecuniary damages,
14 which include the balance due on Plaintiff's invoices, $18,730.50; damages related to the
15 $80,000 equipment upgrade; lost revenue from the set ups Plaintiff was deprived of as a
16 result of the alleged breach; and attorneys' fees of at least $3,000. While the complaint is
17 vague as to the amount of lost profits, Defendant has properly relied on Plaintiff's allegations
18 to arrive at an estimate of potential damages in excess of the jurisdictional amount. *See, e.g.*,
19 *McPhail v. Deere & Co.*, 529 F.3d 947, 955–56 (10th Cir. 2008) (citing *Meridian Sec. Ins.*
20 *Co. v. Sadowski*, 441 F.3d 536, 541 (7th Cir. 2006)). It is more likely than not that damages
21 related to the equipment upgrade and lost set ups exceeds the amount necessary, when added
22 to the balance due on the invoices and a minimum of $3000 in attorneys' fees, to satisfy the
23 jurisdictional amount of $75,000.

24 In sum, based on the facts and theories set forth in the complaint, the Court finds, by
25 a preponderance of the evidence, that any calculation of potential damages exceeds $75,000.

26 **2.    Diversity**

27
28

1          For the Court to have diversity jurisdiction, each plaintiff must be a citizen of a
2   different state than each of the defendants. *Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996).
3   For diversity jurisdiction purposes, a corporation is a citizen of the state of its incorporation
4   and the state of its principal place of business. *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d
5   1026, 1028 (9th Cir. 2009). The Supreme Court has interpreted the phrase "principal place
6   of business" to mean the place where a corporation's high level officers direct, control, and
7   coordinate the corporation's activities. *Hertz Corp. v. Friend*, 559 U.S. at 82. A corporation's
8   principal place of business typically will be the place where the corporation maintains its
9   headquarters, "provided the headquarters is the actual center of direction, control, and
10  coordination, *i.e.,* the 'nerve center,' and not simply an office where the corporation holds
11  its board meetings (for example, attended by directors and officers who have traveled there
12  for the occasion)." *Id.* at 1192.

13         As alleged in the complaint, Plaintiff Bradshaw Home Medical Equipment, LLC, is
14  an Arizona limited liability company. (Doc. 1, Ex. A, ¶¶ 1, 6.) Defendant contends that
15  diversity exists because it is a Delaware corporation with its principal place of business in
16  North Carolina. Defendant's Notice of Removal is accompanied by the declaration of Cindy
17  Phillips, Senior Vice President of Human Resources of Curo Health Services. (*Id.*, Exhibit
18  C.) Ms. Phillips attests that Hospice Family Care, Inc., is a Delaware corporation that
19  maintains its principal place of business in North Carolina; that the sole stockholder of
20  Hospice Family Care is Curo Arizona Hospice, LLC, a Delaware limited liability company,
21  with Curo Health Services, LLC, as its sole member; that Curo Health Services is organized
22  as a Delaware limited liability company, with Curo Health Services Holdings, Inc., as its sole
23  member; and that Curo Health Services Holdings is a Delaware corporation with its principal
24  place of business in North Carolina. (*Id.*)

25         In responding to Plaintiff's motion to remand, Defendant submitted a second affidavit
26  from Ms. Phillips. (Doc. 14, Ex. B.) Here she attests that Defendant's officer and directors
27  "are all residents of North Carolina and perform their regular duties as officers at the
28

- 7 -

1  Headquarters of Hospice Family Care, Inc., located at 491 Williamson Road, Suite 204, in
2  Mooresville, North Carolina." (*Id.* at 1–2.) Phillips also states that "[t]hough Hospice Family
3  Care, Inc. conducts a significant amount of business activity in Arizona, that activity is
4  directed, controlled, and coordinated by its officers in Mooresville, North Carolina." (*Id.* at
5  2.)

6  Plaintiff contends that Ms. Phillips' declarations are not competent proof that
7  Defendant's corporate headquarters in North Carolina are the true center of control and
8  coordination rather than merely an office used for board meetings. (Doc. 12 at 9; Doc. 17 at
9  5.) Plaintiff argues that Defendant's principal place of business is in Arizona, where it has
10 offices in Prescott and Mesa and where the parties' business dealings have occurred. (Doc.
11 12 at 9.) Plaintiff also asserts that Defendant's website does not indicate that any of its
12 operations are directed or controlled from North Carolina. (*Id.*)

13 The Court disagrees with Plaintiff and finds that the Phillips declarations are sufficient
14 to establish that Defendant's principal place of business, or nerve center, is in North
15 Carolina. Court have consistently found such sworn statements by corporate officers to be
16 competent proof of a corporation's principal place of business. *See, e.g.*, *McCollum v. State*
17 *Farm Ins. Co.*, 376 Fed.Appx. 217, 219–20 (3d Cir. 2010); *Simonson v. Allstate Ins. Co.*, No.
18 CV 12–4918 CAS (MANx), 2012 WL 3073918, at *2 (C.D.Cal. July 27, 2012); *Thompson*
19 *v. Intel Corp.*, No. CIV 12-0620 JB/LFG, 2012 WL 3860748, at *17 (D.NM. Aug. 27, 2012);
20 *37 Water, LLC v. DHI Water & Environment, Inc.*, No. 1:10-cv-347-CWD, 2010 WL
21 4853304, at *4 (D.Idaho Nov. 22, 2010); *Greystone Bank v. Tavarez*, No. 09-CV-5192
22 (SLT), 2010 WL 3311835, at *1–2 (E.D.N.Y. June 10, 2010).

23 Because Plaintiff is an Arizona resident while Defendant is incorporated in Delaware
24 and has its principal place of business in North Carolina, diversity of citizenship is present
25 under 28 U.S.C. § 1332(a).

26 / / /
27 / / /
28

- 8 -

**CONCLUSION**

Based on the forgoing, Defendant has met its burden with respect to the jurisdictional amount and diversity.

Accordingly,

IT IS HEREBY ORDERED denying Plaintiff's motion to remand (Doc. 12).

DATED this 2nd day of December, 2013.

Paul G. Rosenblatt
United States District Judge

- 9 -